Summons Issued
Receipt No 40488

FILED
BILLINGS DIV.

2006 MAR 27 PM 2 14

PATRICK E. DUFFY, CLERK

BY _____
DEPUTY CLERK

Reneé L. Coppock (Bar No. 1914)
CROWLEY HAUGHEY HANSON
TOOLE & DIETRICH PLLP
490 North 31st Street, Suite 500
Billings, Montana 59103-2529
(406) 252-3441
(406) 259-4159 (Facsimile)
rcoppock@crowleylaw.com

Scott T. Wilsdon (*pro hac vice* pending)
Jeremy Roller (*pro hac vice* pending)
YARMUTH WILSDON CALFO PLLC
925 Fourth Avenue, Suite 2500
Seattle, Washington 98104
(206) 516-3800
(206) 516-3888 (Facsimile)
wilsdon@yarmuth.com
jroller@yarmuth.com

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>EDIRECTSOFTWARE, a Canadian partnership; JESSE WILLMS; LINDA WILLMS; 1016363 ALBERTA LTD., a Canadian corporation; and 1021018 ALBERTA LTD., a Canadian corporation,<br><br>Defendants. | No. CV-06-53-BLG-RWA<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |

## INTRODUCTION

1. This is an action by Microsoft Corporation ("Microsoft") to recover damages arising from infringement of Microsoft's copyrights and trademarks in its software by eDirectSoftware, Jesse Willms, Linda Willms, 1016363 Alberta Ltd. and 1021018 Alberta

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF – Page 1

Ltd. (collectively, "Defendants"), and to enjoin Defendants' future infringements. Defendants are actively engaged in trafficking in counterfeit, tampered and/or infringing Microsoft software, and counterfeit and unauthorized product keys used to install and/or activate that software. Microsoft seeks damages, an accounting, the imposition of a constructive trust upon Defendants' illegal profits, and injunctive relief.

### THE PARTIES

2.  Plaintiff Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Microsoft develops, markets, distributes, and licenses computer software.

3.  Upon information and belief, defendant eDirectSoftware is a Canadian partnership with its principal places of business in Billings, Montana and Sherwood Park, Alberta. eDirectSoftware advertises software and computer related products on the Internet at www.edirectsoftware.com. Among the products advertised by eDirectSoftware are purported Microsoft software and components.

4.  Defendant Jesse Willms is a resident of Sherwood Park, Alberta, Canada. Jesse Willms is the owner of eDirectSoftware. Upon information and belief, Jesse Willms personally participated in and/or had the right and ability to supervise, direct and control the wrongful conduct alleged in this Complaint, and derived direct financial benefit from that wrongful conduct.

5.  Defendant Linda Willms is a resident of Sherwood Park, Alberta, Canada. Linda Willms is an eDirectSoftware executive and is listed in the "WHOIS" registry as the registrant for the eDirectSoftware.com domain. Upon information and belief, Linda Willms personally participated in and/or had the right and ability to supervise, direct and control the wrongful conduct alleged in this Complaint, and derived direct financial benefit from that wrongful conduct.

6.  Defendant 1016363 Alberta Ltd. is a numbered corporation formed and registered under the laws of Alberta, Canada. Upon information and belief, 1016363 Alberta

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF – Page 2

Ltd. is a member of the partnership, together with defendant 1021018 Alberta Ltd., doing business as eDirectSoftware. Defendant Linda Willms is the registered director and sole shareholder of 1016363 Alberta Ltd.

7. Defendant 1021018 Alberta Ltd. is a numbered corporation formed and registered under the laws of Alberta, Canada. Upon information and belief, 1021018 Alberta Ltd. is a member of the partnership, together with defendant 1016363 Alberta Ltd., doing business as eDirectSoftware. Defendant Jesse Willms is the registered director and sole shareholder of 1021018 Alberta Ltd.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Microsoft's claims for trademark infringement, copyright infringement and related claims pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, 17 U.S.C. § 1203, 18 U.S.C. § 2318, and 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has supplemental jurisdiction over Microsoft's claims arising under the laws of Montana pursuant to 28 U.S.C. § 1367(a) because the claims are so related to Microsoft's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

10. Venue is proper in the District of Montana pursuant to 28 U.S.C. § 1391(b), § 1391(d) and § 1400(a) because (i) the acts of infringement and other alleged wrongful conduct occurred in the District, (ii) Defendants may be found in the District, and (iii) Defendants have sufficient connection with the District to make venue proper. Personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2).

## FACTS COMMON TO ALL CLAIMS

11. Microsoft develops, advertises, markets, distributes, and licenses a number of computer software programs. Microsoft's software programs are recorded on magnetic diskettes and/or CD-ROMs, and they are packaged and distributed together with associated

proprietary materials such as user's guides, user's manuals, end-user license agreements ("EULAs"), Certificates of Authenticity ("COAs"), and other components.

12. Microsoft and its partners distribute some software and other components to customers pursuant to Volume License Agreements. Licensees typically consist of mid- to large-size companies and organizations that desire to install and use Microsoft software on multiple personal computers. The Volume License Agreements permit the licensees to install and use Microsoft software on a specified number of computers, and subject to other conditions set forth in the Volume License Agreement.

13. The CD-ROMs, also known as media, distributed pursuant to a Volume License Agreement, are marked with language restricting redistribution and unauthorized uses of the software. For example, a 2004 Volume License version of a Microsoft software program known as Windows XP Pro is marked with the following language: "All use subject to volume license agreement. Do not make illegal copies of this disc. **Not for retail or OEM Distribution. Not for Resale.**" (Emphasis in original.)

14. Microsoft distributes unique Volume License Keys ("VLKs") to each of its licensees. Each VLK consists of a 25-character alphanumeric code arranged in five groups of five characters each, and must be entered at the time the software is installed on the licensee's computer or computers. The VLK is needed to unlock the software program, or bypass activation, and to enable its use.

15. VLKs are generated by Microsoft; each VLK distributed by Microsoft is unique to the licensee to whom it is distributed. Pursuant to the terms of their Volume License Agreements, licensees are required to keep their VLKs confidential and to use their best efforts to prevent the disclosure of their VLKs to any unauthorized third party.

16. Microsoft and its partners also distribute some software and other components to Original Equipment Manufacturers ("OEMs") and System Builder ("SB") customers. OEMs and SB typically install Microsoft software on a specified number of

computers manufactured by them, and subject to other conditions set forth in their License Agreements with Microsoft.

17. Microsoft distributes unique 25-character alphanumeric keys to its OEM and SB customers. The OEM and SB keys are similar to the VLKs Microsoft distributes to its Volume License customers. The OEM or SB key is needed to unlock the software program and to enable its use.

18. Because a CD-ROM containing Microsoft's copyrighted software is capable of being installed on a potentially unlimited number of computers, Microsoft relies on the unique product keys and special installation and in some cases activation features within the software, to prevent or at least restrict the installation and use of its software by unauthorized third parties.

19. <u>Microsoft Windows XP</u>: Microsoft has developed, advertises, markets, distributes, and licenses software packages known as Microsoft Windows XP Professional ("Windows XP"). Windows XP is an operating system for desktop and laptop systems. It performs a number of computer-related operations including, but not limited to, providing support for various applications and allowing remote access to data and applications stored in Windows XP desktops from network connections. Microsoft holds a valid copyright in Windows XP (including user's reference manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for Microsoft Windows XP, bearing the number TX 5-407-055 is attached hereto as Exhibit 1 and is incorporated by reference.

20. <u>Microsoft Windows 2000 Pro</u>: Microsoft has developed, advertises, markets, distributes and licenses a software package known as Microsoft Windows 2000 Professional ("Windows 2000 Pro"). Windows 2000 Pro is an operating system for business desktop and laptop systems. It performs a number of computer-related operations including, but not limited to, running software applications, connecting to Internet and intranet sites, and accessing files, printers, and network resources. Microsoft holds a valid copyright in

Windows 2000 Pro (including user's reference manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for Microsoft Windows 2000 Pro, bearing number TX 5-036-267, is attached hereto as Exhibit 2 and is incorporated by reference.

21.  Microsoft Office 2003: Microsoft Office 2003 Professional ("Office 2003") is a suite of popular Microsoft software programs. Microsoft holds a valid copyright in Office 2003 (including user's reference manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for Microsoft Office 2003, bearing number TX 5-837-617, is attached as Exhibit 3 and is incorporated by reference. Office 2003 includes the following popular Microsoft software programs:

a.  Microsoft Access 2003, a program that allows users to create and manipulate databases and to store data. Microsoft holds a valid copyright in Microsoft Access 2003 (including user's reference manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Copyright Registration Certificate for Microsoft Access 2003, bearing number TX 5-872-225, is attached as Exhibit 4 and is incorporated by reference.

b.  Microsoft Excel 2003, a program that allows users to create and manipulate spreadsheets, perform calculations, and store numerical data. Microsoft holds a valid copyright in Microsoft Excel 2003 (including user's reference manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Copyright Registration Certificate for Microsoft Excel 2003, bearing number TX 5-837-636, is attached as Exhibit 5 and is incorporated by reference.

c.  Microsoft Outlook 2003, a program that allows users and networked teams to create and manage calendars, tasks, contacts, and email communications. Microsoft holds a valid copyright in Microsoft Outlook 2003 (including user's reference

manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Copyright Registration Certificate for Microsoft Outlook 2003, bearing number TX 5-900-087, is attached as Exhibit 6 and is incorporated by reference.

        d.      Microsoft PowerPoint 2003, a program that allows users to create, organize and present overhead and slide presentations. Microsoft holds a valid copyright in Microsoft PowerPoint 2003 (including user's reference manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Copyright Registration Certificate for Microsoft PowerPoint 2003, bearing number TX 5-852-649, is attached as Exhibit 7 and is incorporated by reference.

        e.      Microsoft Word 2003, a program that allows users to create and edit reports and documents. Microsoft holds a valid copyright in Microsoft Word 2003 (including user's reference manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Copyright Registration Certificate for Microsoft Word 2003, bearing number TX 5-900-088, is attached as Exhibit 8 and is incorporated by reference.

        f.      Microsoft Publisher 2003, a desktop publishing program that allows users to create, customize, and publish materials such as newsletters, brochures, flyers, catalogs, and Web sites. Microsoft holds a valid copyright in Microsoft Publisher 2003 (including user's reference manuals, user's guides, and screen displays) that was duly and properly registered with the United States Copyright Office. A true and correct copy of the Copyright Registration Certificate for Microsoft Publisher 2003, bearing number TX 5-837-618, is attached as Exhibit 9 and is incorporated by reference.

      22.      Microsoft has also duly and properly registered a number of trademarks and a service mark in the United States Patent and Trademark Office on the Principal Register, including, but not limited to:

a. "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236 and Renewal for computer programs and computer programming services;

b. "MICROSOFT," Trademark Registration No. 1,256,083, for computer hardware and software manuals, newsletters, and computer documentation;

c. "WINDOWS," Trademark Registration No. 1,872,264 for computer programs and manuals sold as a unit;

d. WINDOWS FLAG LOGO, Trademark Registration No. 1,816,354, for computers, computer peripherals, and computer programs and manuals sold as a unit;

e. COLORED WINDOWS LOGO, Trademark Registration No. 1,815,350, for computers, computer peripherals, and computer programs and manuals sold as a unit;

f. "POWERPOINT," Trademark Registration No. 1,475,795, for pre-recorded computer programs recorded on magnetic disks;

g. "MICROSOFT ACCESS," Trademark Registration No. 1,741,086, for computer programs for use with databases and manuals sold as a unit;

h. PUZZLE PIECE LOGO, Trademark Registration No. 1,982,562 for computer programs and instruction manuals sold as a unit;

i. COLORED FLAG DESIGN, Trademark Registration No. 2,744,843, for computer software and manuals sold as a unit therewith; and

j. "OUTLOOK," Trademark Registration No. 2,188,125, for computer programs, specifically programs providing enhanced electronic mail and scheduling capabilities and instructional manuals sold as a unit.

23. True and correct copies of the Trademark Registrations for Paragraphs 22.a. through 22.j. are attached hereto as Exhibits 10 through 19, respectively, and are incorporated by reference.

## DEFENDANTS' INFRINGEMENT

24. Beginning at a time unknown and continuing to the present, Defendants eDirectSoftware, Jesse Willms, Linda Willms, 1016363 Alberta Ltd. and 1021018 Alberta Ltd. have actively engaged in the illegal and unlawful business of trafficking in counterfeit, tampered and/or infringing computer software and components, and counterfeit and/or unauthorized VLKs and other keys used to install and use that software.

25. Defendants advertise and distribute counterfeit, tampered and/or infringing Microsoft software and components in interstate and foreign commerce on the Internet through Defendants' website at www.edirectsoftware.com.

26. On or about January 26, 2005, Defendants distributed one unit of Microsoft Windows XP Pro to an investigator. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was not authorized for use with the software distributed by Defendants, and was displayed on a counterfeit VLK label.

27. On or about January 26, 2005, Defendants distributed one unit of Microsoft Office Pro Enterprise 2003 to an investigator. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was not authorized for use with the software distributed by Defendants, and was displayed on a counterfeit VLK label.

28. On or about May 9, 2005, Microsoft received a unit of Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about February 28, 2005. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft

only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was not authorized for use with the software distributed by Defendants, and was displayed on a counterfeit VLK label.

29. On or about May 24, 2005, Defendants distributed one unit of Microsoft Windows 2000 Pro to an investigator. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it had been tampered with chemical solvents or by other means to obliterate the copyright restriction printed on the software (CD-ROM).

30. On or about May 24, 2005, Defendants distributed one unit of Microsoft XP Pro to an investigator. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, the key included in the transaction was not authorized for use with the software distributed by Defendants, and was displayed on a counterfeit key label.

31. On or about September 7, 2005, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about August 8, 2005. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it consisted of a "recovery" disc that is only distributed to customers of Original Equipment Manufacturers (OEMs), such as Dell Computers, and is not available for retail sale. That analysis further established that the key included in the transaction was not authorized for use with the software distributed by Defendants, and was displayed on a counterfeit label.

32. On or about September 19, 2005, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about April 1, 2005. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further

established that the VLK included in the transaction was counterfeit (*i.e.*, generated by a source other than Microsoft) and was displayed on a counterfeit VLK label.

33. On or about September 29, 2005, Microsoft received one unit of Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants within the previous six months. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was distributed with a product key that was not authorized for use with the software distributed by Defendants, and was displayed on an illicit COA label.

34. On or about October 6, 2005, Defendants distributed two units of Microsoft Windows XP Pro to an investigator. Microsoft analyzed the software and determined that while the CD-ROMs were genuine, they consisted of recovery discs that are only distributed to customers of Original Equipment Manufacturers (OEMs), such as Dell Computers, and are not available for retail sale. That analysis further established that the product keys included in the transaction were not authorized for use with the software with the software distributed by Defendants, and were displayed on illicit or counterfeit labels.

35. On or about October 6, 2005, Defendants distributed one unit of Microsoft Office Pro 2003 to an investigator. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was not authorized for use with the software distributed by Defendants, and was displayed on a counterfeit VLK label.

36. On or about December 28, 2005, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about December 5, 2005. Microsoft analyzed the software and determined that the software (CD-ROM) was counterfeit.

37. On or about January 11, 2006, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about December 12, 2005. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was distributed with a COA label that had been tampered to remove the name of the OEM and that the product key displayed on the COA label was authorized for use only on computers built by that OEM.

38. On or about February 13, 2006, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about January 29, 2006. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was counterfeit (*i.e.*, generated by a source other than Microsoft) and was displayed on a counterfeit VLK label.

39. On or about February 13, 2006, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about January 30, 2006. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was counterfeit (*i.e.*, generated by a source other than Microsoft) and was displayed on a counterfeit VLK label.

40. On or about February 22, 2006, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about November 8, 2005. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is

distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was counterfeit (*i.e.*, generated by a source other than Microsoft), was displayed on a counterfeit VLK label, and distributed with a counterfeit end user manual.

41. On or about February 22, 2006, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about February 3, 2006. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was counterfeit (*i.e.*, generated by a source other than Microsoft) and was displayed on a counterfeit VLK label.

42. On or about March 2, 2006, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about November 21, 2005. Microsoft analyzed the software and determined that while the software (CD-ROM) was genuine, it was a type that is distributed by Microsoft only pursuant to a Volume License Agreement, and is not authorized for distribution to any customer other than a Volume License customer. That analysis further established that the VLK included in the transaction was counterfeit (*i.e.*, generated by a source other than Microsoft) and was displayed on a counterfeit VLK label.

43. On or about March 22, 2006, Microsoft received one unit of Microsoft Windows XP Pro from a cooperating third party. Upon information and belief, the software had been purchased from Defendants on or about January 4, 2006. Microsoft analyzed the software and determined that the software (CD-ROM) was counterfeit.

44. In each of the transactions described in Paragraphs 26 to 28, 32, 35 and 38 to 42, Defendants distributed Volume License software to individuals who were not Volume

License customers of Microsoft, in violation of Microsoft's license rights. To support the installation of that software, Defendants further distributed VLKs that were either counterfeit or misappropriated from Microsoft or its Volume License customers.

45. Defendants have continued these illegal practices despite receiving multiple written and oral warnings from Microsoft:

    a. On or about March 14, 2005, Microsoft contacted Defendant Jesse Willms regarding Defendants' unauthorized use of the Microsoft OEM System Builder Gold Member logo and the Microsoft Certified Partner logo on the www.edirectsoftware.com website. In a telephone conversation and follow-up electronic mail message, Microsoft warned that Defendants had offered Microsoft OEM software for sale in violation of Microsoft's licensing rights and that Defendants had sold software for use only pursuant to a Volume License agreement in violation of Microsoft's licensing rights. Microsoft informed Defendant Jesse Willms that Defendants must cease and desist from distributing such software.

    b. On or about July 29, 2005, Microsoft notified Defendants by letter that Defendants had distributed Microsoft software designated for distribution only pursuant Microsoft's "Fresh Start for Donated Computers Program" (a program established for primary and secondary schools to ensure that their donated computers are properly licensed) in violation of Microsoft's intellectual property rights. Microsoft further demanded that Defendants cease and desist from their infringing conduct.

    c. On or about July 29, 2005, Microsoft notified Defendants by letter that Defendants had distributed Microsoft OEM software designated for distribution only with qualifying computer hardware in violation of Microsoft's intellectual property rights. Microsoft further demanded that Defendants cease and desist from their infringing conduct.

    d. On or about August 15, 2005, Microsoft sent an e-mail message to Defendants at the e-mail address Sales@eDirectSoftware.com to follow up on the July 29, 2005 letters. Microsoft received an e-mail message from that e-mail address which asked,

"What is Microsoft fresh start software." Although Microsoft provided a toll free number and invited Defendants to call to discuss the issue, Defendants did not call.

46. Defendants' continued distribution and sale of infringing Microsoft software and components has caused and is continuing to cause consumers to be confused, mistaken or deceived about the authenticity of Microsoft products distributed by Defendants. Since 2004, Microsoft has received reports from hundreds of consumers who contacted Microsoft because they were concerned about the authenticity of Microsoft products advertised or distributed by Defendants. Defendants' wrongful conduct has caused and is continuing to cause harm to Microsoft's business reputation and good will.

47. Defendants have persisted in their illegal practices despite numerous warnings from Microsoft. Defendants' violations are willful, deliberate and committed with prior notice and knowledge of Microsoft's copyrights and registered marks. Defendants' wrongful conduct has caused and continues to cause significant and irreparable harm to Microsoft. Microsoft brings this action to recover damages for the harm it has sustained, to impose a constructive trust upon Defendants' illegal profits and assets purchased with those profits, and to obtain injunctive relief prohibiting Defendants' further violations and infringements.

## COUNT I
### (Copyright Infringement, 17 U.S.C. § 501, *et seq.*)

48. Microsoft repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 47, inclusive.

49. Microsoft is the sole owner and licensor of Microsoft Windows XP Professional, Windows 2000 Professional, Office 2003 Professional, and other software and components covered by Microsoft's registered copyrights and bearing Microsoft's registered trademarks or imitations thereof, and of all corresponding copyrights and Certificates of Registration.

50. Defendants have infringed the copyrights in Microsoft's software, including, but not limited to Microsoft Windows XP Professional, Windows 2000 Professional, Office

2003 Professional, and other software and components covered by Microsoft's registered copyrights and bearing Microsoft's registered trademarks or imitations thereof, by distributing infringing materials in the United States of America, without approval or authorization from Microsoft.

51.   Defendants' conduct has been willful within the meaning of the Copyright Act. At a minimum, Defendants acted with willful blindness to and in reckless disregard of Microsoft's registered copyrights.

52.   As a result of their wrongful conduct, Defendants are liable to Microsoft for copyright infringement. Microsoft has suffered, and will continue to suffer, substantial losses, including, but not limited to, damage to its business reputation and goodwill. Microsoft is entitled to recover damages, which include its losses and all profits Defendants have made as a result of their wrongful conduct, pursuant to 17 U.S.C. § 504(b).

53.   Alternatively, Microsoft is entitled to statutory damages pursuant to 17 U.S.C. § 504(c). In addition, because Defendants' infringement has been willful within the meaning of the Copyright Act, the award of statutory damages should be enhanced pursuant to 17 U.S.C. § 504(c)(2).

54.   Microsoft is also entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) Microsoft's copyrights are unique and valuable property which have no readily determinable market value, (b) Defendants' infringement harms Microsoft's business reputation and goodwill such that Microsoft could not be made whole by any monetary award, and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

55.   Microsoft is also entitled to recover its attorney's fees and costs of suit pursuant to 17 U.S.C. § 505.

## COUNT II

### (Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2))

56. Microsoft repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 55, inclusive.

57. Defendants were and are actively engaged in the business of importing (to the United States), offering to the public, providing and trafficking in counterfeit and/or unauthorized VLKs and product keys, knowing or having reason to know that such VLKs and product keys (a) are primarily designed or produced for the purpose of circumventing activation and/or validation features of Microsoft software, (b) have only limited commercially significant purpose or use other than to circumvent Microsoft's activation and/or validation features, or (c) are marketed by Defendants and persons acting in concert with Defendants for use in circumventing Microsoft's installation, activation and/or validation features, in violation of 17 U.S.C. § 1201(a)(2).

58. Defendants' violations have injured and will continue to injure Microsoft by depriving Microsoft of sales of authorized software, impairing Microsoft's ability to protect its intellectual property rights, and interfering with Microsoft's contractual and prospective business relations. Microsoft is entitled to recover actual damages and Defendants' profits made as a result of their wrongful conduct, pursuant to 17 U.S.C. § 1203(c)(2). Alternatively, Microsoft is entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

59. Defendants have violated 17 U.S.C. § 1201(a)(2) willfully and for purposes of commercial advantage or private financial gain.

60. Microsoft is also entitled to injunctive relief pursuant to 17 U.S.C. § 1203(b)(1) and to an order impounding any materials involved in violation of the Digital Millennium Copyright Act pursuant to 17 U.S.C. § 1203(b)(3). Defendants knew or should have known that importing (to the United States), offering to the public, providing and trafficking in counterfeit and/or unauthorized VLKs and product keys was and is illegal and prohibited. Such violations have caused and will continue to cause Microsoft irreparable

harm, and Microsoft has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

61.     Microsoft is also entitled to recover its attorney's fees and costs of suit pursuant to 17 U.S.C. § 1203.

## COUNT III

### (Trademark Infringement, 15 U.S.C. § 1114, *et seq.*)

62.     Microsoft repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 61, inclusive.

63.     Defendants' activities constitute infringement of Microsoft's federally registered trademarks and service mark in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114(1).

64.     Because Microsoft has marketed, advertised, promoted, distributed, and licensed its software under the trademarks and service mark described in this Complaint, these trademarks and service mark are the means by which Microsoft's software is distinguished from the software and related items of others in the same field or related fields.

65.     Because of Microsoft's long, continuous, and exclusive use of these trademarks and service mark, they have come to mean, and are understood by customers, end users, and the public to signify software programs or services of Microsoft.

66.     The infringing materials that Defendants have and are continuing to use, offer, advertise, market, install or distribute are likely to cause confusion, mistake, or deception as to their source, origin, or authenticity.

67.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the infringing materials that Defendants are using, advertising, installing, marketing, offering, or distributing originate with or are authorized by Microsoft, to the damage and harm of Microsoft, its licensees, and the public.

68.     Defendants used, offered, advertised, marketed, installed, offered or distributed infringing material with the willful and calculated purposes of (i) misleading, deceiving, or

confusing customers and the public as to the origin and authenticity of the infringing materials, and (ii) trading upon Microsoft's goodwill and business reputation. At a minimum, Defendants acted with willful blindness to and in reckless disregard of Microsoft's registered marks.

69.  As a result of their wrongful conduct, Defendants are liable to Microsoft for trademark infringement. Microsoft has suffered, and will continue to suffer, substantial losses, including, but not limited to, damage to its business reputation and goodwill. Microsoft is entitled to recover damages, which include its losses and all profits Defendants have made as a result of their wrongful conduct, pursuant to 15 U.S.C. § 1117(a).

70.  In addition, because Defendants' infringement of Microsoft's trademarks and service mark was willful, within the meaning of the Lanham Trademark Act, the award of damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b). Alternatively, the award of statutory damages should be enhanced pursuant to 15 U.S.C. § 1117(c).

71.  Microsoft is also entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) and to an order compelling the impounding of all infringing materials being used, offered, marketed, or distributed by Defendants pursuant to 15 U.S.C. § 1116, subsections (a) and (d)(1)(A), and pursuant to 28 U.S.C. § 1651. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) Microsoft's trademarks and service mark are unique and valuable property which have no readily determinable market value, (b) Defendants' infringement constitutes harm to Microsoft's business reputation and goodwill such that Microsoft could not be made whole by any monetary award, (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials, and (d) Defendants' wrongful conduct, and the resulting damages to Microsoft, is continuing.

72.  Microsoft is also entitled to recover its attorney's fees and costs of suit pursuant to 15 U.S.C. § 1117.

## COUNT IV

### (False Designation of Origin, 15 U.S.C. § 1125, *et seq.*)

73.   Microsoft repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 72, inclusive.

74.   Because Microsoft advertises, markets, distributes, and licenses its software under the trademarks and service mark described in this Complaint, these trademarks and service mark are the means by which Microsoft's software is distinguished from the software or products of others in the same field or related fields.

75.   Because of Microsoft's long, continuous, and exclusive use of these trademarks and service mark, they have come to mean, and are understood by customers, end users, and the public to signify software or services of Microsoft.

76.   Microsoft has designed distinctive and aesthetically pleasing displays, logos, icons, graphic images, and packaging (collectively, "Microsoft visual designs") for its software programs.

77.   Defendants' wrongful conduct includes the use, advertising, marketing, offering, or distribution of Microsoft's marks, name, and/or imitation visual designs (specifically displays, logos, icons, graphic designs, and/or packaging) that are virtually indistinguishable from Microsoft visual designs, in connection with their goods and services.

78.   Defendants engaged in such wrongful conduct with the willful purpose of (i) misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the goods and services offered, marketed or distributed in connection with Microsoft's marks, name, and imitation visual designs, and (ii) trading upon Microsoft's goodwill and business reputation. Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that the imitation visual design originate from or are authorized by Microsoft, all in violation of § 43(a) of the Lanham Trademark Act, set forth at 15 U.S.C. § 1125(a).